# Southern Cotton Oil Co. *v.* Walker.

*Damages for Injury to Servant.*

(Decided Dec. 16, 1909. 51 South. 169.)

1. *Master and Servant; Injury to Servant; Complaint.*—A complaint under subdivision 1, sec. 3910, Code 1907, which alleges that a servant who operated a machine used for the purpose of separating the lint from the seed, was injured by having his hand and arm caught in the machine; that the injury was caused by a defect in the ways, works, machinery, etc., in that one of the flues connected with the machine, whose office was to carry the lint, was negligently constructed and was so crooked that it would at short intervals become choked and cause the lint to choke the machine; that the machine was so negligently constructed that it became choked; that it became necessary for the servant to unchoke the machine by pressing down on a lever connected with the machine as a part thereof, and unchoke the machine; that the machine was not equipped with a reasonably sufficient appliance for properly raising the breast thereof and holding the same up while the machine was being cleaned out, and by reason thereof, the servant was injured, states as a direct cause of the injury the insufficiency of the appliance for raising and holding up the breast of the machine while it was being cleaned, and is good against demurrer.

2. *Same; Defect in Machinery.*—An allegation in a complaint that the injury was caused by the kicking of the lever to the machine while plaintiff was pressing it, and that the kicking was due to its defective condition, resulting from the fact that it was sprung or that the nut of the bolt which passed through the hinge that attached the lever to the breast of the machine produced a shoulder upon which lint would accumulate, and which would prevent the lever from holding up after it was raised, sufficiently shows that the bolt and hinge were an inherent part of the lever and machine.

3. *Same; Cause of Injury.*—In such a complaint an allegation that the injury resulted from the moving, jumping or kicking of the lever while the servant was pressing it, and that it did so as a result of its being insufficient to hold up the breast of the machine,

[Southern Cotton Oil Co. v. Walker.]

and that when pressed at the time of the accident it jumped or kicked sufficiently alleges the cause of the injury.

4. *Same; Contributory Negligence.*—Where the action was for injuries to a servant while operating the machine, a plea alleging that the servant was guilty of negligence which proximately contributed to his injuries in that he negligently caused or allowed his hand or arm to be caught in the machine, is not good as a plea of contributory negligence.

5. *Same.*—Where the action was for injury to a servant while attempting to unchoke a machine used to separate lint from cotton seed, a plea alleging that the servant was negligent in permitting his hand to come in contact with the revolving saws of the machine, but which fails to allege that the use of a stick was the proper, or only safe, or the safer, way to unchoke the machine, in insufficient as a plea of contributory negligence.

6. *Same.*—Where the action was for injury to a servant while attempting to unchoke a machine used for separating the lint which adhered to cotton seed, a plea alleging that plaintiff negligently wore his coat while working at the machine, whereby the sleeve of the coat was caught in the machine, thus drawing his hand and arm into the machine, but which fails to set out any facts showing that it was negligent for the servant to wear a coat, nor aver that it was obviously or necessarily dangerous to wear a coat at such time, or that the only safe way was to be without a coat, is not sufficient as a plea of contributory negligence.

7. *Same.*—A plea of contributory negligence should set out the facts constituting the negligence; hence, a plea in defense of an action by a servant for injuries received while unchoking a machine used for separating lint from cotton seed which alleges only that the servant was guilty of negligence in that he negligently attempted to relieve the machine of its choked condition while the machine was in motion, should go further and aver that it was obviously dangerous to do so, or should set forth facts showing that it was negligent to unchoke the machine while it was in motion, to render it good as a plea of contributory negligence.

8. *Same.*—Where it was not negligence per se to fail to stop a machine used for separating lint from cotton seed before unchoking it, a plea of contributory negligence setting up such facts should aver that it was the duty of the servant to stop it before unchoking it, or that it was the only proper and safe way to stop it.

9. *Same; Assumption of Risk; Promise to Remedy Defect.*— If a servant knows and appreciates the danger and risk and voluntarily elects to encounter them, and is injured, he assumes the risk and cannot recover for the injury; but if the master expressly or impliedly undertakes to remove the danger within a reasonable time, this assurance is an assumption by the master of the risk incident to the duties of employment during such reasonable time, and if the servant is injured pending such reasonable time by reason of such danger the master is liable.

10. *Same; Compliance With Command.*—Where a servant knows and appreciates the danger, but enters on the perilous work by order of his superior officer he assumes the risk although he enters unwillingly.

[Southern Cotton Oil Co. v. Walker.]

11. *Same; Knowledge of Danger.*—Where a servant with knowledge of danger arising from defects in the machine he is operating continues in the service in consideration of an increase in wages he assumes the risk resulting from the defect.

12. *Same; Replication.*—A replication to a plea of assumption of risk which does not aver any particular time as to when the master promised to remedy the defect and that the servant continued to remain in the employment, and was injured within a reasonable time after the promise, but which fails to aver that a reasonable time for making the repairs had not expired at the time of the injury, is defective.

13. *Same.*—Where a plea charges the servant with knowledge of conditions and results at the time of the accident, a replication thereto should negative the knowledge, and if it merely sets up that the danger was not so obvious that a reasonably prudent man would not have undertaken the work, it is insufficient.

14. *Appeal and Error; Harmless Error; Ruling on Pleading.*—Where defendant obtains the benefit of the plea under other pleas filed on which issue is joined, he cannot complain of the sustaining of the demurrer to such plea.

(McClellan, J., dissents as to the ruling on the 4th rejoinder.)

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Joseph Walker against the Southern Cotton Oil Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint is as follows:

Count 1: "Plaintiff claims of the defendant $10,000 as damages, for that on, to wit, the 13th day of February, 1905, plaintiff was an employe of the defendant, engaged in its service at defendant's Cullman oil mill, in Cullman county, Ala., and in the course of his employment as such employe it became and was plaintiff's duty to operate that portion of the machinery connected with defendant's said plant known as the 'linter,' a machine used to gin from cotton seed the lint adhering thereto before they were used in the manufacture of oil; and on the date aforesaid, while plaintiff was engaged in and about his duties aforesaid, his left hand and arm were caught in said machine, and lacerated, torn, bruised, and injured in such sort that plaintiff suf-

fered the loss of his said hand and a part of his arm, and was caused to suffer great pain and agony, and his body was permanently crippled and disfigured, to his great damage. Plaintiff avers that said injury was caused by reason of a defect in the condition of the ways, works, machinery, or plant connected with or used in the business of the defendant at the said mill aforesaid, in that one of the flues connected with the said linter, the office of which was to carry the lint ginned by the said linter from the cotton seed into the pressroom, was so negligently constructed and so crooked that it would at short intervals become choked and obstructed, and caused the lint to choke said machinery, in such sort as, and if not immediately relieved, the friction caused by the rapid revolution of the cylinders in said machine would ignite the lint and endanger the destruction of said plant; that it was plaintiff's duty as such employe of said defendant to relieve said machinery when it became choked, and on the date aforesaid said machine did become choked, and while engaged in his duty as aforesaid he received the injuries complained of. Said defect arose from, or had not been discovered or remedied owing to, the negligence of defendant, or of some person in its service intrusted by it with the duty of seeing that its ways, works, machinery, or plant was in proper condition." The count as amended alleges, in addition to what is alleged above, that the linter was so negligently constructed and so choked that it became choked and obstructed, and in discharging his duties in operating said machine it became necessary for plaintiff to unchoke said machine by pressing down on a lever connected to said machine as a part thereof, and unchoke said machine by removing the lint and other substance choking it from under the saws and out of the breast thereof; that said

machine is not equipped with a reasonably sufficient appliance for properly raising the breast of said machine and holding said breast up while said machine was being cleaned out, and by reason thereof the breast of said machine would unexpectedly fall or be jerked down, and cause said lever to kick or jump, and as a proximate consequence thereof plaintiff received the injuries complained of.

As originally filed, count 2 alleged the negligence to L. A. Curtis, who was charged with superintendence. As amended, count 2 is the same as count 1 down to and including the words, "to his great damage," with the following addition: "And plaintiff avers that his said injury was caused by the negligence of the defendant in this: As a part of said machine and connected therewith was what was known and called a 'lever,' the office and function of said lever being to lift the breast of said linter off of the saws thereof when it became necessary to clean said machine, or to unchoke or unclog said machine in the event it became choked or clogged. Said lever was in part attached to said machine by a hinge which was underneath the breast of said machine; and plaintiff avers that said lever as a part of said machine was defective in this: A bolt passing through said hinge protruded beyond the end of said hinge and with a nut thereon produced a 'shoulder' upon which at times would catch cotton upon the end of this bolt or shoulder, and the cotton so caught would become wrapped around said bolt or shoulder, and by so doing would prevent said lever from at all times holding up, after having once been lifted, the breast of said machine off of the saws thereof. Or said lever, as a part of said machine, was defective in this: It was sprung, and at all times would not hold the breast of said linter off of the saws there-

of after said breast had been lifted off of said saws, and by reason of said defect in said machine it would at times allow the said breast, after having been lifted, to fall, which would cause said lever to jump, move, or kick. And plaintiff avers that on the day and date aforesaid said machine became choked or clogged, and while attempting to unchoke or unclog the same, and while in the discharge of his duties as aforesaid in operating the said 'linter' machine, that he attempted to lift the breast of said machine by using said lever, and by reason of said defect in said machine as is aforesaid the said lever jumped, moved, or 'kicked,' throwing plaintiff against the said machine and committing the injuries complained of as is above set forth." And it then concludes as does count 1.

Count 21 lays the damages at $15,000, and alleges the relation and injuries as does count 1; and it is averred that the injuries were caused proximately by reason of a defect in the ways, works, machinery, or plant of said defendant used at its said oil mill, which arose from, or had not been discovered or remedied owing to, the negligence of some person in its service intrusted by it with the duty of seeing that its ways, works, machinery, or plant was in proper condition, with the following addition: "As such employe the work at which plaintiff was engaged and intrusted to do by defendant was to operate, run, or attend the operation of a machine constituting a part of defendant's plant, called a 'linter,' the office of which was to gin from cotton seed the lint adhering thereto; and because of said defective condition of said machine, or the flues or condenser connected therewith, said machine frequently became choked, in such sort as, if not relieved, the rapid revolution of the cylinders or saws in said machine would ignite the lint therein; that said

machine was provided with a lever, the office of which was to raise the breast of said machine when it became choked, that said machine might be relieved from its said choked condition; that in order to relieve said machine, when it became choked, plaintiff in the discharge of his duty in operating said machine was required to press down on said lever, and thereby raise the breast of said machine off of the saws therein; that said lever when in good condition could be pressed down, and the breast of said machine would thereby be lifted off of and held away from the saws of said machine by the weight of said breast; that at the time of the injury complained of the said lever was so defective that when it was pressed down it would not hold up the said breast at all times, but would sometimes move, jump, or 'kick,' so as to allow said breast to fall; that on the day and date aforesaid plaintiff, while in the discharge of his duties as employe as aforesaid in operating said machine, pressed down on said lever to relieve said machine when it became choked as aforesaid, and the lever moved, jumped, or 'kicked' in such sort as to cause plaintiff to be thrown on or against said machine, thereby causing his injuries, to his damages in the sum of $15,000. Wherefore he brings this suit."

Demurrers were interposed to these counts as follows: To count 1: "(1) Vague, uncertain, and indefinite. (2) It is not alleged with sufficient certainty what duty defendant owed to the plaintiff, or wherein or how defendant violated any duty it owed to the plaintiff. (3) It is repugnant and inconsistent in its allegations as to the proximate cause of plaintiff's injuries. (4) It is not shown with sufficient certainty that the defect alleged proximately caused the plaintiff's injuries. (5) It does not appear that plaintiff was aware

of the defect alleged and received his injuries while attempting to repair same. (6) Plaintiff himself was intrusted with the duty of seeing that the defendant's ways, works, machinery, and plant were in proper condition, so far as appears from said count. (7) It is not shown with sufficient certainty whether the defect alleged or plaintiff's attempt to adjust the machine caused his injuries. (8) It appears that it was plaintiff's duty to relieve said machine when it became choked, and that he received his injuries while so doing, and not on account of said alleged defect. (9) The defect complained of was the remote cause of plaintiff's injury. (10) The defects alleged do not show a defect in the condition of said flue. (11) It is not alleged with sufficient certainty that the defect alleged was the proximate cause of the injury. (12) The allegation is by way of conclusion merely." To count 2: The same demurrers as to count 1, with the additional demurrers that the averment that one of the flues was so negligently constructed and so crooked that it became choked and was obstructed is a mere conclusion of the pleader. To count 21: Same as counts 1 and 2, and the other counts in the complaint.

The following pleas were filed by the defendant: "(2) Defendant says that plaintiff himself was guilty of negligence which proximately contributed to his said alleged injuries, and that his said negligence consisted in this: Plaintiff negligently caused or allowed his hand or arm to be caught in or by a machine called a 'linter.' (3) Plaintiff himself was guilty of negligence which proximately contributed to his said alleged injuries, in that he negligently allowed or caused his coat sleeve to be caught in or by a machine called a 'linter,' whereby his arm or hand was drawn against or came in contact with a revolving saw," etc. "(7) Plaintiff was

guilty of negligence which proximately contributed to his said alleged injury in this: Plaintiff negligently wore a coat, while attempting to relieve a linter machine which was then and there in motion, or a flue connected therewith, of its choked condition, which said linter machine or flue had become choked or obstructed with lint or other substance, whereby the sleeve of said coat was caught in or by said linter machine, or the saws therein or connected therewith, and plaintiff's hand was thereby drawn against or caused or allowed to come in contact with said saw or saws and injured as in said complaint alleged. (8) Defendant says that plaintiff himself was guilty of negligence which proximately contributed to his said alleged injuries, and that his said negligence consisted in this: Plaintiff negligently attempted to relieve a linter machine of its choked condition while said linter machine was in motion. (9) Defendant says that plaintiff himself was guilty of negligence which proximately contributed to his said alleged injuries, and that his said negligence consisted in this: The machine at the defendant's plant at which plaintiff was at work at the time of his injuries was in motion, but was equipped with an appliance or appliances, to wit, a loose pulley or lever or handle by means of which said machine could be stopped, and defendant avers that it was the duty of plaintff to relieve said machine of its choked condition when said machine would become choked or obstructed with lint or other substances; and the defendant further avers that, notwithstanding the aforesaid, plaintiff negligently failed to cause said machine to be stopped before attempting to relieve the same of its choked condition, or plaintiff negligently attempted to relieve said machine of its said choked condition while said machine was in motion, and without first causing the same to be stop-

ped, whereby his arm was caught in or by the rapidly revolving saws in said machine, and plaintiff received the injuries complained of." Plea 10 alleges the conditions alleged in 9, and further alleges that plaintiff was acquainted and knew of the fact that the rapidly revolving saw or saws were located in close proximity to where plaintiff would have to place his hand in an effort on his part to relieve said machine of its choked condition, and with knowledge of the fact that, should his hand come in contact with said rapidly revolving saws, the same would be greatly injured, and with said knowledge aforesaid, and with an appreciation of the danger, attempted to relieve the machine by using his hand, and whereby it was caught, etc. Plea 13 is an assumption of risk. Plea 19 is same as 10. "(20) Defendant says that plaintiff voluntarily assumed the risk of his said alleged injuries in this: That plaintiff voluntarily remained in the service of the defendant in the operation or direction of said machinery with full knowledge of the facts and conditions therein alleged for an unreasonable time." Plea 20 was filed in answer to count 21. The other pleas were filed separately and severally to each count of the complaint.

Replication 6 to pleas 10 and 19 is as follows: "That plaintiff was acting in obedience and in accordance with instruction of defendant, or its authorized superintendent, under whom plaintiff was working as an employe, in cleaning said machine, and in the manner that he had been so instructed to clean the same, and at the time of the injuries complained of the danger was not so obvious or glaring as that a reasonably prudent man would not have undertaken the work, and in doing said work plaintiff acted in a reasonably prudent and careful manner." The following replications were filed to plea 13: "(2) That defendant or its superintendent

knew, or within a few days before the injury complain-
ed of in the complaint occurred the plaintiff informed
the defendant's superintendent, L. A. Curtis, that oper-
ating said saw sharpener and said linter was the work
of two men, and the defendant's said superintendent
said to plaintiff to go ahead and run said machines, or
words to that effect, and, he, said superintendent, would
employ more help, and the plaintiff was thereby induc-
ed to continue in the service of said defendant, and be-
fore the lapse of an unreasonable time after said prom-
ise said injury complained of occurred. (3) That de-
fendant or its superintendent in charge of its plant
knew, or within a few days before the injury complain-
ed of in the complaint occurred plaintiff informed the
defendant's superintendent, L. A. Curtis, that operat-
ing said saw sharpener and said linter was the work of
two men, and the said superintendent told the plaintiff
that he would employ more help to operate them, and
the plaintiff was thereby induced to continue in the
sevice of the defendant, and within and before the lapse
of a reasonable time from the time of said promise to.
repair by the defendant's said superintendent the injury
complained of occurred. (4) That the defendant or its
superintendent in charge of said plant knew, or within
a few days previous to the injury complained of in the
complaint the plaintiff complained to the defendant's,
superintendent that the work of operating said saw
sharpener and said linter was the work of two men,
and the defendant's said superintendent promised to
employ more help, and before the lapse of a reason-
able time from the time of said promise said injury
complained of occurred." The sixth replication to
pleas 10 and 19 is as follows: "That plaintiff was
acting in obedience to and in accordance with the in-
structions of defendant, or its authorized superintend-

ent under whom plaintiff was working as an employe in cleaning said machine, and in the manner that he had been so instructed to clean the same, and at the time of the injury complained of the danger was not so obvious or glaring as that a reasonably prudent man would not have undertaken the work, and in doing said work plaintiff acted in a reasonably prudent and careful manner."

The rejoinders were as follows: To special replications 2, 3, and 4: "(3) For further rejoinder to each of said replications, separately and severally, defendant says, if it be true that a promise to repair defects complained of was made to plaintiff, the danger and risk that are incidental to the work of relieving the linter machine of its choked condition in its said alleged defective condition was obvious, imminent, and immediate, and was understood and fully appreciated by plaintiff before and at the time he undertook to relieve said machine. (4) Defendant says that, notwithstanding the alleged promise made to plaintiff to repair or remedy the alleged defect, plaintiff for and in consideration of a reward, to wit, a material increase in his wages, made and offered to him by the defendant at the time said promise to repair or remedy was made, voluntarily continued in the employment of defendant in the use of said alleged defective machinery or plant, with the full comprehension and appreciation of the extraordinary risks and hazard incidental thereto."

Charge 1, refused to defendant, is as follows: "(1) If the jury believe from the evidence in this case that the plaintiff, Walker, has made a contradictory statement as to any material facts in evidence in the case, the jury may consider such contradictory statement in determining what weight they will give to the testimony of said Walker."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant.
—Counsel discuss and insist upon their demurrers to
counts, 1, 2 and 21, but cite no authority in support of
their contention. They insist that the court erred in
sustaining demurrers to plea 2.—*A. C. G. & A. R. R.
Co. v. Bullard*, 47 South. 21. On the same authority
they insist that the court erred in sustaining demurrers
to pleas 3, 5 and 7. Plea 8 was good.—*Creola L. Co. v.
Mills*, 42 South. The court erred in sustaining demur-
rer to plea 20.—*Goins v. Ala. S. & W. Co.*, 141 Ala. 537.
Replication 2 to plea 12 was not good.—*Eureka Co. v.
Bass*, 81 Ala. 214. On the same authority, replications
3 and 4 to plea 12 were bad. Replication to plea 10 was
a departure.—*Bridges v. T. C. I. & R. R. Co.*, 109 Ala.
The court erred in sustaining plaintiff's demurrer to
defendant's 3rd rejoinder to plaintiff's replication 2, 3
and 4, and to defendant's plea 12.—*Eureka Co. v. Bass,
supra;* 69 N. W. 993; *Jones v. Woodward I. Co.*, 80
Ala. The defendant's rejoinder No. 4 to plaintiff's rep-
lications 2, 3, and 4 to plea 12 was good, and the court
improperly sustained demurrers.—Labatt on M. & S.
p. 1002, and authorities there cited. Counsel discusses
assignments of error relative to evidence but without
citation of authority. The court erred in overruling
defendant's objection to argument of counsel.—*Fields
v. Cotton O. Co.*, 104 Ala. *Tannehill v. The State*, 48
South. The court erred in its oral charge marked A.
—143 Mass 197; 92 Me. 272; 44 Ill. App. 365; 66 Mich.
277; 159 Mass. 154; 143 Mass. 206; Labatt on M. & S.
1235; 13 N. W. 219; 12 Atl. 599; 60 N. W. 254. The
court's oral charge marked B. was faulty.—*Bynum v.
Bir. R. L. & P. Co.*, 139 Ala. 389; *Holland v. T. C. I.
& R. R. Co.*, 91 Ala. The court's oral charge C. was
faulty.—Authorities supra. The court erred in giving
charge 3 for plaintiff.—*Eureka Co. v. Bass.*. The court

should have given defendant's charge 1.—*Orr v. The State,* 119 Ala. Counsel discuss other charges refused, but without citation of authority.

BROWN & KYLE, for appellee.—Count 1 was sufficient.—*Bir. R. L. & P. Co. v. Chastain,* 48 South. 87; *Goin v. Ala. S. & W. Co.,* 141 Ala 547; *Sloss-S. S. & I. Co. v. Mobley,* 139 Ala. 429; *L. & N. v. Lowe,* 48 South. 101, and authorities therein cited. The count sufficiently alleged the defect and that the defect was an inherent part of the machinery.—Authorities supra, and *Houston B. Co. v. Dyal,* 135 Ala. 169; *Jackson L. Co. v. Cunningham,* 141 Ala. 213; *Southern Ry. Co. v. McGowan,* 43 South. 382. Count 21 was not subject to the demurrer interposed.—*L. & N. v. Allen,* 78 Ala. 494; *Wilson v. L. & B.* 85 Ala. 272; *K. C. M. & B. v. Burton,* 97 Ala. 243; *L. & N. v. Bouldin,* 110 Ala. 198; *Southern Ry. v. Shook,* 42 South. 580. Defendant had the benefit under plea 11 of the defense of the assumption of risk, and hence, the sustaining of the demurrers to the other pleas setting up the same defense was without injury.—*Southern Ry. Co. v. Wilson,* 138 Ala. 510. Under the issues presented by this plea plaintiff had a right to rebut without special replication by showing a promise to repair.—*Goin v. Ala. S. & W. Co., supra; Southern Ry. Co. v. Gaynor,* 152 Ala. 186. The pleas of contributory negligence are defective for failure to set forth the facts constituting the same.—*A. G. S. v. Brook,* 135 Ala. 401; *Southern Ry. v. Hobbs,* 151 Ala. 335; *Oreola L. Co. v. Mills,* 42 South. 1020. On these authorities, the court properly overruled demurrers to plaintiff's replication and sustained demurrers to defendant's rejoinder. Counsel discuss assignments of error as to evidence, but without citation of authority.

ANDERSON, J.—Count 1, as amended, is framed under subdivision 1 of the employer's liability statute. —Section 3910 of the Code of 1907. While this count avers a defect in a flue connected with the linter, in addition to a defect in the machine in not being equipped with a reasonably sufficient appliance for properly raising the breast of said machine and holding said breast up while said machine was being cleaned out, the proximate cause of the injury is ascribed in said count as resulting from the failure to have the machine equipped with the proper appliance for raising the breast and holding it up when being cleaned out. The defective flue is not alleged as the proximate cause, but the reference thereto is merely descriptive of conditions existing and which may have contributed indirectly to the injury. The direct cause is alleged to be due to the kicking of the lever produced by the falling of the breast, and that the breast would fall because there was no sufficient appliance for raising and holding it up while the machine was being cleaned or unchoked. The trial court did not err in overruling the demurrers to this count.

Amended count 2 is also under subdivision 1 of the employer's liability statute. The injury is charged to have resulted from the kicking of the lever while plaintiff was pressing it, and which kicking owing to its defective condition, resulted either from the fact that it was sprung or that the nut to the bolt, passing through the hinge which attached the lever to the breast of the machine, produced a shoulder upon which lint would accumulate and wrap, and which would prevent said lever from holding up after it was raised. Nor do we think that the shoulder upon the bolt in the hinge was a foreign substance, and not, therefore, a part of the lever. The count avers that the bolt was in

the hinge which attached the lever to the breast, and the bolt and hinge, therefore, became on inherent part of the lever. The second count, as amended, was not subject to the demurrers, which were properly overruled.

The injury, as charged in count 21, resulted from the moving, jumping, or kicking of the lever while plaintiff was pressing it, and which did so as a result of its being insufficient to hold up the breast at all times, and when pressed, on the occasion in question, it jumped or kicked, thereby causing the injury. The trial court did not err in overruling the demurrers to this count.

The trial court did not err in sustaining the demurrers to pleas 2 and 3.—*Ala. Chemical Co. v. Niles,* 156 Ala. 298, 47 South. 239.

Plea 5 was defective, and the demurrer thereto was properly sustained. If not otherwise bad, it fails to aver that using a stick was the proper, or only safe, or the safer, way to unchoke the machine.

Plea 7 was defective. If not otherwise bad, it fails to set out any facts showing that it was negligent for the plaintiff to have worn a coat at the time. It does not aver that it was obviously or necessarily dangerous to wear a coat at the time, or that the only safe way was without a coat.

A plea of contributory negligence should set out the facts constituting the negligence. Plea 8 was therefore bad for failing to set out the constituents of negligence. It was not necessarily negligence on the part of the plaintiff, to attempt to relieve the linter of its choked condition while the machine was in motion. It is not averred that it was obviously dangerous to do so, nor are any other facts set out showing that it was negligence to so unchoke the linter while the machine was

moving.—*Creola Co. v. Mills,* 149 Ala. 483, 42 South. 1019.

Plea 9 was bad. The fact that plaintiff failed to stop the machine before unchoking it was not per se negligence, and the plea fails to aver that it was his duty to stop it, or that the only proper and safe way was to stop it, before unchoking the same. The general averment that he negligently unchoked it while running does not suffice.

Plea 20 may be good as per the interpretation given the plea in the case of *Going v. Steel & Wire Co.,* 141 Ala. 537, 3 South. 784; but as so construed it is, in effect, the same as plea 11, under which the defendant got the benefit of said plea 20.

The true doctrine as to the assumption of risk has been often declared by this court, and we quote from the case of *Gainer v. So. R. R.,* 152 Ala. 191, 44 South. 652, 654: "The doctrine of 'volenti non fit injuria' applies under the employer's liability act, and where an employe, knowing and appreciating the danger and risk, elects voluntarily to encounter them, and is injured, he cannot maintain an action to recover damages for the injury sustained. But if the employer undertakes, expressly or impliedly, to remedy the defect and remove the danger within a reasonable time, such an undertaking or assurance is an assumption by the employer of the risk incident to the duties of the employment during such reasonable time, and if the employe is injured in the meantime, by reason of the risk and danger thus assumed by the employer, the latter will be responsible for the injury. If the employe remains in the service, and continues to encounter voluntarily and with a knowledge and appreciation of the risk, without such assurance, or after the time within which the defect should have been remedied and the danger removed, ac-

cording to such undertaking or assurance, the risk becomes his own. An examination of all our cases will show that, in order to place the risk, after notice, on the employer, there must be shown a promise, either express or implied, to remedy the defect.—*Eureka Co. v. Bass.* 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368, 17 South. 29, 53 Am. St. Rep. 127; *Bridges' Admr. v. T. C. I. & R. Co.,* 109 Ala. 287, 19 South. 495; *Patnode v. Harter,* 20 Nev. 303, 21 Pac. 679."

As long as the period is running which is conceived to be covered by the promise, the defense of an assumption of the given risk cannot be relied upon by the master.—1 Labatt, Employer's Liability, § 425. Again, this author, in discussing the period covered by the promise, in section 429, says: "The circumstances accompanying the promise are sometimes of such a nature as to show that the servant was placed under a peremptory and immediate obligation to discard the defective instrumentality altogether, or to discontinue its use until it should be restored to a normally safe condition. But in the great majority of the instances the mere fact of giving the promise necessarily implies that the servant is expected to go on working. Sometimes the promise is given in words which obligate the master to bring about a restoration of normally safe conditions within a definite time. Under such circumstances it is presumably the duty of the servant to determine, immediately after the giving of the promise, whether he will incur a risk which he may possibly have to endure for the entire specified period. More usually, however, the time at which the promise is to be fulfilled is not expressly mentioned. The legal effect of the promise is then considered to be that normally safe conditions will be restored in a reasonable time."

Replications 2, 3 and 4 to plea 13 do not aver any specific time as to when the defect would be remedied, and in the absence of a fixed time the law would imply a reasonable time, and said replications aver that plaintiff continued to remain in the employment and was injured within a reasonable time after the promise. The replications do not aver, however, that a reasonable time for making the repairs had not expired. They aver that he was injured before the lapse of a reasonable time from the time of said promise, but not within a reasonable time for making the repairs. There is nothing to indicate, in the replications, that a reasonable time for making the repairs was not within a short time after the promise, or when the repairs could or should have been made. The replications avoid making the reasonable time, therein set out, as applicable to the period within which the repairs could or should be made.

The sixth replication to pleas 10 and 19 was defective. The nineteenth plea charges the plaintiff with a knowledge of conditions and results at the time he attempted to unchoke the machine. The sixth replication does not negative this knowledge, but merely sets up that the danger was not so obvious or glaring as that a reasonably prudent man would not have undertaken the work. This might be a good answer to the observance of orders, in the absence of actual knowledge of the defects and danger; but whether or not the defects and danger were obvious and glaring matters not, if the servant actually knew of same, as alleged in plea 19. "There is no doubt of the general rule that one who, knowingly and appreciating the danger, enters upon perilous work, even though he does so unwillingly and by order of his superior officer, must bear the risk."— *Ferren v. Old Colony R. R.*, 143 Mass. 197, 9 N. E. 608; Labatt, Master and Servant, p. 1235, § 438, and cases

cited in note to same. Of course, the rule might not apply to one not capable of appreciating the danger, notwithstanding he knew of same; but the record discloses that this plaintiff is sui juris and does not come within the exceptions to the rule.

The sixth replication, if not otherwise bad, was subject to the thirteenth ground of the defendant's demurrer. We do not question the soundness of the quotation in counsel's brief, in so far as it applies to the case from which it is taken, [*Pioneer Mining Co. v. Smith*, 150 Ala. 359, 43 South. 561,] as that case was dealing with a servant who did not actually know of the danger, after he was assured that the defect had been remedied. Moreover, the opinion says, on the top of page 360 of 150 Ala., and on page 562 of 43 South.: "This may all be true, yet it does not show beyond dispute that the intestate knew of the danger, or that the defect was open and glaring to ordinary observation after the attempt to remedy same." Of course, if a servant knew of the danger from any source, he would be bound by his knowledge, whether the danger was glaring and open or not.

We have pronounced replications 2, 3, and 4 defective, for the reason pointed out in the discussion of same; but whether or not the demurrer took the point, so as to cause reversible error, we did not decide, as the case must be reversed on other propositions. Anticipating, however, that the replications will be amended so as to conform to this opinion, and that rejoinders 3 and 4 will be refiled, we will discuss them as a guide at the next trial. The third rejoinder was defective, for the reasons given in the discussion of the law as relating to the replications.

As we understand the fourth rejoinder, it charges the plaintiff with an assumption of risk by continuing in

·the service in consideration of an increase in his wages. It does not controvert the promise to remedy the defect, but undertakes to shift the risk, after the making of the promise, from the master to the plaintiff, in consideration of an increase in his wages. Says Mr. Labatt, in discussing this question (section 378, p. 1002) : "The advocates of both the doctrines discussed in sections 376, 377, supra, are apparently agreed upon the doctrine that knowledge is conclusive against a servant, where he is to receive higher pay in consideration of his doing the work, which involves an abnormal risk due to a defective condition of the instrumentalities." See, also, authorities cited in note to said section. The trial court erred in sustaining the demurrer to the fourth rejoinder.

As this case must be reversed upon the pleading, and as the complaint contained many counts, when the evidence was given, that were subsequently withdrawn by the plaintiff, it cannot serve as an accurate guide, upon the next trial, to discuss all the points on the evidence and charges. We will suggest, however, that the trial court committed reversible error in refusing charge 1, requested by the defendant.—*Hale v. State,* 122 Ala. 89, 26 South. 236. Nor does the fact that it may have been given in the oral charge of the court cure the error.—*Snyder v. State,* 145 Ala. 33, 40 South. 978; *Orr v. State,* 117 Ala. 69, 23 South. 696.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD and SAYRE, JJ., concur. MCCLELLAN, J., concurs in the conclusion, and in the opinion, except as to the ruling as to the fourth rejoinder. He does not think that it sets up a new contract, and thinks that the demurrer thereto was properly sustained.